## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

Gay-Lesbian-Bisexual Transgender
Pride-Twin Cities,

       Plaintiff,

v.

Minneapolis Park and Recreation Board,

       Defendant,

Court File: 10-cv-02579 JRT/JJG

**DEFENDANT'S MEMORANUM
IN OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION**

---

## INTRODUCTION

Plaintiff Gay-Lesbian-Bisexual Transgender Pride-Twin Cities organizes and operates the annual Gay Pride Festival ("Festival"). Many of the activities of the Festival take place in Loring Park, a park owned and operated by Defendant Minneapolis Park and Recreation Board ("Park Board").

In April, 2010, attorneys representing Brian Johnson ("Johnson") notified the Park Board that Johnson was intending to attend the 2010 Festival and display signs, distribute literature and speak to members of the public to convey his religious beliefs which Plaintiff finds to be contrary to the message it wishes to send through the Festival. Johnson had been removed from the 2009 Festival, and asserted that his removal constituted a violation of his First Amendment rights. Johnson requested the Park Board affirm his right to attend the event and convey his message.

The Park Board reviewed Johnson's request and determined that Johnson's request to convey his message in Loring Park was constitutionally protected. After notifying Johnson that he would be permitted to convey his message provided his conduct did not become disruptive, Plaintiff asked the Park Board to reverse its decision and to either ban Johnson from conveying his message in Loring Park, or to require that he convey his message from the streets across from Loring Park. The Park Board declined, and Plaintiff brought this action.

Plaintiff now seeks a preliminary injunction enjoining the Park Board to ban Johnson from conveying his message in Loring Park, or requiring him to convey it from the streets across from Loring Park. The Park Board submits this Memorandum in Opposition to Plaintiff's Motion.

## FACTS

The Park Board owns and operates all of the parkland in the City of Minneapolis, including Loring Park, which is located just south of downtown Minneapolis. Loring Park consists of forty-two acres of land in a densely populated part of the City. Loring Park is accessible on all sides and there are no physical barriers to prevent access to the Park. The Park contains numerous amenities, including a wading pool, which are accessible to the public. (Affidavit of Shane Stenzel [hereinafter "Stenzel Aff."], ¶ 2)

On January 16, 2010, Plaintiff applied for a permit from the Park Board to stage a portion of the 2010 Twin Cities Pride Festival ("Festival") in Loring Park.

(Stenzel Aff. ¶ 3.). The application details the Park Board's permit application

process and provides:

> [a]ll events and applicant's guests, vendors, concessionaires and exhibitors
> are subject to and must abide by the codes rules, regulations, ordinances,
> statutes, and the laws of MPRB, the City of Minneapolis, the State of
> Minnesota, and the United States of America.

(Exhibit A to Stenzel Aff.).

The Festival has been held at Loring Park for thirty-two of the last thirty-

seven years.  (Stenzel Aff. ¶ 3).  Because the Festival has been an on-going

success, the Plaintiff would be given priority for its event over other applicants to

use Loring Park for the same dates. (Stenzel Aff. ¶ 3).  However, the Special

Permit does not grant Plaintiff exclusive control of Loring Park.  (Stenzel Aff. ¶

5).  The Plaintiff's Special Permit for Loring Park includes, but is not limited to a

beer garden, three (3) stages for entertainment, three (3) food courts, and

numerous vendor booths.  The Permit sets the attendance for the two (2) day event

at 300,000 people. The limited space within the Loring Park and the very large

numbers of people who are attending required the employment of three Park

Police officers[1] by the Plaintiff during the event as a condition to the permit.

(Stenzel Aff. ¶¶ 6 and 7; Exhibit. B).

For more than a decade prior to 2009, Plaintiff had authorized Johnson's

participation in the Festival by allowing him a vendor booth in Loring Park.

(Exhibit 1 to Transmittal Affidavit of Michael Salchert [hereinafter "Salchert

---

[1] The Park Board has its own separate police force.

3

Aff."].   In 2009, however, Plaintiff denied Johnson a vendor booth and instead, Johnson chose to attend the event as a member of the general public.  (Exhibit 4 to Salchert Aff.)  During the 2009 Festival, Johnson was arrested and removed from the area.  The charges against Johnson were subsequently dropped.   (Exhibit 1 to Salchert Aff.)  *See also*, Exhibit 9 to Salchert Aff.

On April 5, 2010, the Park Board received a letter from the Alliance Defense Fund ("ADF") demanding that Johnson be allowed to enter Loring Park and onto the perimeter sidewalks during the time of the Festival for the purpose of distributing literature, display signs, and speaking. (Exhibit 1 Salchert Aff.)   ADF asserted that Johnson would be expressing his religious views at the Festival and that such views were protected by the First Amendment to the United States Constitution.  *Id.*  ADF threatened legal action if the Park Board attempted to limit Johnson's speech.  *Id.*

The Park Board analyzed the request and determined that, because the Festival is open to the public and conducted on public park land, Loring Park remains a traditional public forum.  On April 26, 2010, the Park Board responded to ADF, advising that it would not prevent Mr. Johnson from expressing his First Amendment free speech rights at the Festival. (Exhibit 2 to Salchert Aff.). The Park Board advised ADF that it reserved its authority to preserve the orderly movement of people and protect the safety and convenience of the general public. *Id.*

4

In early June 2010, the Park Board contacted Plaintiff to advise it of the decision to not prevent Mr. Johnson from attending the Festival.  (Salchert Aff., ¶ 2) A meeting was held between representatives of Plaintiff and the Park Board to discuss the decision.  *Id.*  Plaintiff  took the position that the content of Johnson's speech was contrary to Plaintiff's message and that therefore, the Park Board must be limit Johnson's speech.  *Id.*  The Park Board reviewed the law relied upon by Plaintiff, but concluded that it could not limit Johnson's speech or his attendance at the Festival.  *Id.*

On June 21, 2010,  the Park Board received a letter from Plaintiff demanding that the Park change its position with regard to Johnson or Plaintiff would commence legal action.  (Exhibit 3 to Salchert Aff.)  The Park Board again reviewed Plaintiff's argument and concluded that it could not limit Johnson's speech or his attendance at the Festival.  (Exhibit 4 to Salchert Aff.)

Plaintiff then commenced this action and now seeks a preliminary injunction, requiring the Park Board to limit Johnson's speech.

## ARGUMENT

"A preliminary injunction is an extraordinary remedy and the burden of establishing the propriety of an injunction is on the movant." *Watkins Incorporated v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003)(citations omitted).  "A preliminary injunction should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *General Motors Corporation v. Harry Brown's, LLC*, 590 F.Supp.2d 1134, 1137 (D.Minn. 2008).  The court has broad

5

discretion when ruling on preliminary injunction requests.   *United Indus. Corp. v. Clorox*, 140 F.3d 1175, 1179 (8th Cir. 1998).

When determining whether to grant a preliminary injunction, the court must consider:  1) the threat of irreparable harm to the movant; 2) the balance of this harm and the injury that granting the injunction will inflict on other interested parties; 3) the probability that the movant will succeed on the merits; and 4) the public interest. *Dataphase Sys. Inc. v. CL Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981)(en banc).  "The party seeking injunctive relief bears the burden of proving all of the *Dataphase* factors." *Watkins* at 844.

In the context of First Amendment cases, courts assume irreparable harm; however, irreparable harm exists only if plaintiffs are *correct* and their First Amendment rights have been violated. *Jihad v. Fabian*, 2010 WL 1780238 at *3 (D. Minn. 2010).[2]  Here, there are dual First Amendment rights implicated—those of Johnson and those of Plaintiff.   Thus, irreparable harm is assumed for both, provided each can show they are *correct* in their assertion of their rights.  Since Plaintiff brings this motion, the court must focus on the likelihood that the Plaintiff will succeed on the merits of its claim.  In this case, the Plaintiff cannot demonstrate that it will succeed on the merits of its Free Speech claim.

---

[2] A copy of this case is attached as Exhibit 7 to the Transmittal Affidavit of Michael Salchert.

There is no dispute that Loring Park is a traditional public forum,[3] and "governmental entities are strictly limited in their ability to regulate private speech in such "traditional public fora.'" *Pleasant Grove City, Utah v. Summum*, ___ U.S. ___, 129 S.Ct. 1125, 1132 (2009).  Nonetheless, Plaintiff asserts that it has a right to require the Park Board to limit the speech of anyone whose message does not agree with Plaintiff's message.

Plaintiff relies upon *Hurley v. Irish-American Gay, Lesbian and Bisexual Group of Boston*, 515 U.S. 557 (1995) for the proposition that because it has a permit for Loring Park, it has the right to exclude the speech of anyone whose message conflicts with its message.  (Plaintiff's Memorandum in Support of Motion for Injunctive Relief, p. 19).  Essentially Plaintiff's argument boils down to its belief that, because it has a permit for Loring Park, its First Amendment rights trump those of anyone else's and that Plaintiff alone can dictate what speech occurs during the Festival.  However, the plain language of *Hurley* as well as case law interpreting *Hurley*, including the on-point case of *Startzell v. City of Philadelphia*, 533 F.3d 183 (3rd Cir. 2008), demonstrate that Plaintiff's reading of *Hurley* is overly broad.

---

[3] The courts "long ago recognized that members of the public retain strong free speech rights when they venture into public streets and parks, which have immemorially been held in trust for the use of the public, and time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions." *Pleasant Grove City, Utah v. Summum*, ___ U.S. ___, 129 S.Ct. 1125, 1132 (2009)(internal quotations omitted).

In *Hurley*, the sole issue before the court was whether the State of Massachusetts could require the South Boston Allied War Veterans Council, which conducts the annual St. Patrick's Day Parade, "to <u>include among the marchers</u> a group imparting a message the organizers do not wish to convey." *Id.* at 559, emphasis added. The court held that the parade constituted speech by the Council which was protected by the First Amendment. *Id.* at 569. Similarly, the court held that Irish-American Gay, Lesbian and Bi-Sexual Group of Boston, which was denied the right to march by the Council, intended to communicate its message by participating in the parade. *Id.* at 570. The court held that "the presence of the <u>organized marchers</u> would suggest their view that people of their sexual orientations have as much claim to unqualified social acceptance as heterosexuals and indeed <u>as members of parade units organized around other identifying factors.</u>" *Id.* at 575, emphasis added. This participation, the court held

> would likely be perceived as having resulted from the Council's customary determination about a unit admitted to the parade, that its message was worthy of presentation and quite possibly of support as well.

*Id.* Moreover, the court held

> there was no customary practice whereby private sponsors disavow 'any identity of viewpoint' between themselves and the selected participants. <u>Practice follows practicality here, for such disclaimers would be quite curious *in a moving parade.*</u>

*Id.* at 577, emphasis added. Under the narrow circumstances presented in *Hurley*, the court ultimately ruled that forcing the Council to include speech it disagreed with violated the First Amendment rights of the Council.

8

Cases decided after *Hurley* reinforce the narrow ruling and instruct that *Hurley* does not stand for the proposition that the holder of a permit for use of a traditional public forum can require the government to limit the Free Speech of another individual simply because the permit holder does not agree with the speech. In a case on point, the Third Circuit Court of Appeals rejected the very argument Plaintiff makes here.

In *Startzell v. City of Philadelphia*, 533 F.3d 183 (3rd Cir. 2008), Philly Pride Presents, Inc. (PPPI) organized the 2004 Outfest to celebrate National Coming Out Day on behalf of the lesbian, gay, bisexual and transgendered community. *Id.* at 188. PPPI obtained a permit to close several streets for the festival. *Id.* at 189. It asked the City to ban counter-protesters Repent America from the event. *Id.* at 190. Repent America's members sued after being arrested for refusing to leave the festival. PPPI argued, as Plaintiff does here, that pursuant to *Hurley*, once the permit for the event was issued to PPPI, PPPI was "empowered to enforce the permit by excluding persons expressing contrary messages." *Id.* at 193. The court rejected that argument. In a well-reasoned decision, the Third Circuit distinguished *Hurley*, finding PPPI could not exclude Repent America from the public streets occupied by Outfest because Repent America's members were not participants in the festival but instead simply attendees, and "there was no danger of confusion that [Repent America's] speech would be confused with the message intended by Philly Pride." *Id.* at 196. The court went on to hold that the issuance of a permit to use a traditional public forum

does not transform its status as a public forum, and the government cannot prohibit all speech in a traditional public forum.  *Id.*

Similarly, in *Gathright v. City of Portland, Oregon*, 439 F.3d 573 (9th Cir. 2006), the Ninth Circuit rejected the argument that a permit for a public park gives the permit holder the right to restrict the speech of attendees.  The court held that *Hurley* did not permit the City to evict any person from a public forum whose express messages the permittees disapprove of.  In distinguishing *Hurley*, the court held

> [t]here is a distinction between participating in an event and being present at the same location.  Merely being present at a public event does not make one part of the organizer's message for First Amendment purposes.

*Id.* at 577.  "*Hurley* does not, by its own terms, extend to these circumstances, where a speaker in a public forum seeks only to be heard, not to have his speech included or possibly confused with another's * * *."  *Id.*  at 578.  Rather, *Hurley* "was grounded in whether the plaintiff's views could be mistaken for those of the defendant."  *Id.*  The court held that there was no risk that Gathright's provocations could be mistaken by anybody as part of the message of the events he protests.  *Id.*

Finally, in *Wickersham v. City of Columbia*, 2006 WL 4748740 (W.D. Mo. 2006),[4] *affirmed* 481 F.3d 591 (8th Cir. 2007) the court held that persons

---

[4] A copy of this case is attached as Exhibit 8 to the Transmittal Affidavit of Michael Salchert.

10

attempting to leaflet could not be barred from an air show run by a private group. Distinguishing *Hurley*, the court held

> the Plaintiffs * * * are not trying to participate in the Air Show or become members of the Corporation. They are not even asking to operate a booth. They only want to come into the public area of the event and pass out leaflets, petition, carry signs and wear expressive clothing.

*Id.* at * 5.

The Festival is not a parade with one fluid message being conveyed. It is being held in a 42 acre park which is accessible by any citizen and is open to the public. The Plaintiff anticipates more than 300,000 people will attend the event as spectators over the two day event. (Exhibit A to Stenzel Aff.) Moreover, citizens may enter the park for other purposes. (Stenzel Aff. ¶ 2). Thus, the venue alone distinguishes it from the parade in *Hurley*.

Moreover, Johnson does not seek to participate in the Festival. (Exhibit 1 to Salchert Aff.) He attempted to do so by applying for a vendor permit but was rejected by the Plaintiff. (*Id.* and Exhibit 8 to Salchert Aff.) He now seeks only to convey his religious message as a spectator. (Exhibit 1 to Salchert Aff.) Plaintiff attempts to characterize Johnson a participant by calling him a *de facto* vendor. However, he is clearly not a vendor; Johnson is akin to Gathright, distributing literature and spreading his message in a traditional public forum. And, there is no likelihood that Johnson's views will be mistaken by anyone as being part of the message conveyed by the Festival. Thus, while the Park Board

does not agree with the content of Johnson's message, he has the First Amendment right to convey it in the traditional public forum of Loring Park.

There are additional grounds that Plaintiff's claim fails. *Wickersham* was affirmed by the Eighth Circuit on state action grounds. Specifically, the court held that the Corporation that ran the Air Show was engaged in "state action" because the city police enforced the Corporation's unwanted speech activities. 481 F.3d at 598. As discussed above, the Plaintiff's permit requires it to have Park Board police officers on site to keep the peace and enforce the laws. Plaintiff wants the Park Board to take action to remove from Loring Park persons whose speech they disagree with.[5] (Plaintiff's Memorandum, p. 16). Plaintiff, therefore, is a "state actor" and cannot restrict protected speech in the traditional public forum of Loring Park.

The Park Board acknowledges that it <u>can</u> regulate the First Amendment activities of Festival attendees. However, because Loring Park is a traditional public forum, such restrictions must be "content-neutral time, place, or manner restrictions" and "are justified without reference to the content of the regulated speech, that they are narrowly tailor to serve a significant governmental interest,

---

[5] As discussed above, Loring Park is a 42 acre park accessible on all sides. Plaintiff anticipates 300,000 spectators, along with persons who choose to access the park for other reasons. There will be *three* police officers on site to keep the peace and enforce the laws. It is reasonable to assume Johnson may not be the only spectator who goes to Loring Park during the Festival and expresses an opinion Plaintiff disagrees with. It would be literally impossible for the Park Board to enforce the Plaintiff's dictates.

and that they leave open ample communication of the information." *Startzell* at 197, *citing Ward v. Rock Against Racism*, 491 U.S. 781 (1989).

In this case, Plaintiff asserts that the Park Board should restrict persons whose speech conflicts with its speech to the streets across from Loring Park. It thus asks the Park Board to do so based solely on the content of speech. The Park Board cannot do so. Such a restriction would, on its face, be "with reference to the content of the regulated speech." *See also Gathright,* 439 F.3d at 577 (holding that evicting those who express messages the permittees disapprove of is not a legitimate, content-neutral interest). The Park Board may, however, enforce its laws and rules with respect to speech which causes a disruption or interference with the message of the permit-holders. *Startzell* at 198 ("when protestors move from distributing literature and wearing signs to disruption of the permitted activities, the existence of the permit tilts the balance in favor of the permit-holders.") The Park Board has pledged to monitor the activities of those whose speech conflicts with that of Plaintiff and take action should the activities go beyond protest and distribution of literature into disruption of the Festival. (Cite)

Plaintiff does not have an unfettered right to demand that those persons whose message disagrees with its message be banned from Loring Park. Furthermore, the Park Board cannot violate the First Amendment rights of persons using its parks as attendees at a public event. Therefore, Plaintiff cannot demonstrate that it has a reasonable likelihood of succeeding on the merits of its claim.

13

For the foregoing reason, the Park Board respectfully requests that the

Court deny Plaintiff's Motion for a Preliminary Injunction.

Date:  June 23, 2010                    RICE, MICHELS & WALTHER, LLP


                                        _____s/Ann E. Walther_____
                                        Ann E. Walther (#021369X)
                                        Brian F. Rice (#014468X)
                                        Michael Salchert (#0334182)
                                        10 Second St. N.E., Suite 206
                                        Minneapolis, MN 55413
                                        (612) 676-2300

                                        ATTORNEYS FOR DEFENDANT
                                        MINNEAPOLIS PARK AND
                                        RECREATION BOARD